IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00569-WDM-KLM

LYNETTE DEARDURFF,

    Plaintiff,

v.

RODERICK G. LAMOND, M.D.,

    Defendant.
_____

### ORDER
_____

**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Order Compelling Discovery Pursuant to F.R.C.P. 37(3)(B)(IV) and Certification of Conferral** [Docket No. 74; Filed January 28, 2010] (the "Motion"). Plaintiff responded [Docket No. 80; Filed February 10, 2010], Defendant replied [Docket No. 83; Filed February 18, 2010], and the Motion is ripe for resolution. As set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

**I.     Statement of the Case**

Plaintiff is the mother and guardian of Jefferson Deardurff, an incapacitated person, and brings this suit on his behalf. Complaint, Docket No. 1, ¶ 1. Deardurff was treated at Presbyterian/St. Luke's Medical Center for a recurrent pituitary adenoma in April of 2006. *Id.* ¶ 8. Defendant is a neurosurgeon and was one of Deardurff's treating physicians. *Id.* ¶ 4; Defendant's Answer, Docket No. 36, ¶¶ 1, 4.   Plaintiff alleges that Defendant was

negligent in his provision of medical care to Deardurff.[1]  *Complaint* [#1] ¶¶ 8-12. Specifically, Plaintiff alleges that as a result of Defendant's negligence before and during Deardurff's brain surgery, Deardurff suffered brain damage. *Id.*

Plaintiff has named Edward Seljeskog, M.D., as one of her experts. At issue in the instant Motion is discovery that Defendant seeks from Dr. Seljeskog. Defendant requests a Court Order compelling Plaintiff's production of the following:

(1)  An exemplar, redacted operative report of a pituitary macroadenoma surgery by Dr. Seljeskog as primary surgeon in the last 24 months, or if no such surgery has been performed by him as the primary surgeon, then the most recent operative report where Dr. Seljeskog was the primary surgeon.

(2)  An exemplar office and/or hospital consent form utilized for skull base and/or pituitary adenoma surgery from Dr. Seljeskog, or, if there is no such form, then a hospital surgical consent form used when Dr. Seljeskog performs pituitary adenoma surgery.

**II.  Analysis**

Plaintiff objects to providing the discovery requested, arguing that it is irrelevant. Federal Rule of Civil Procedure 26(b) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *see also Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000) (citations omitted) (noting that "request for discovery should be considered relevant if there is 'any possibility' the information sought may be relevant to the subject matter of the action"). Considering that "[l]imitations on the discovery process necessarily conflict with the 'fundamental principle that the public . . . has a right to every

---

[1] Plaintiff's Complaint also alleges negligence by other Defendants who have since been dismissed from this action pursuant to stipulations of dismissal filed by the parties. *See* Docket Nos. 44, 53, 62.

man's evidence,'" the Federal Rules broadly define the scope of discovery. *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)). The Court may, however, forbid the disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters to protect a party from undue burden and expense. *See* Fed.R Civ.P. 26(c)(1). As a threshold matter, however, the Court must consider whether the discovery sought is relevant to the subject matter of the litigation.

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson*, 220 F.R.D. at 359 (citations omitted); *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D.Kan. 1991) (stating that a party resisting discovery based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome"). However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request. *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC*, No. 07-1121-MLB, 2008 WL 678700, at *2 (D.Kan. March 7, 2008) (citation omitted); *Williams*, 192 F.R.D. at 705 (noting that when relevancy of propounded request not apparent, proponent has burden of establishing it).

Here, Plaintiff contends that the requested discovery is irrelevant because it does

not relate to the criticisms Dr. Seljeskog has made of Defendant's treatment of Deardurff. *See* Report of Edward L. Seljeskog, M.D., Ph.D, Docket No. 81. On the other hand, Defendant seeks the discovery to rebut Dr. Seljeskog's opinion that Defendant's treatment of Plaintiff was negligent. Specifically, Dr. Seljeskog opines that Defendant failed to properly investigate Deardurff's medical and surgical history; Defendant failed to inform the family of the risks of aggressive and complete tumor removal rather than other treatment; and finally, that Defendant's attempt to aggressively remove the tumor caused Deardurff"s injury. *Response* [#80] at 3. Plaintiff does not argue that the requests are facially irrelevant, and the Court concludes that they are not. It is therefore Plaintiff's burden to rebut the presumed relevancy of the requests.

### A.     **Exemplar Report**

Plaintiff contends that an exemplar operative report will not provide any relevant information. Dr. Seljeskog was retained to provide his opinion as to the appropriate standard of care in these circumstances and whether Defendant deviated from that standard of care. Defendant seeks an exemplar report for the information it could provide as to what course of treatment Dr. Seljeskog himself has actually provided to patients with conditions such as Deardurff's.

Testimony from Dr. Seljeskog as to what his personal practices are – or would be – in a situation similar to Deardurff's may be relevant. *See Wallbank v. Rothenberg*, 74 P.3d 413, 416-17 (Colo. App. 2003); *see also Smethers v. Campion*, 108 P.3d 946 (Ariz. Ct. App. 2005) (acknowledging that in particular cases, but not all, cross-examination as to testifying expert witness's own practices is relevant). Defendant, however, seeks discovery of "[a]n operative report documenting Dr. Seljeskog's actual performance of a

4

recent pituitary adenoma surgery." *Reply* [#83] at 4. Defendant maintains that such a report "is reasonably likely to shed light on [Dr. Seljeskog's] current surgical experience with allegedly similar tumors, his surgical approach to tumors similar to Plaintiff's, his technique in either removing the capsule or collapsing the pseudocapsule as was done by Defendant, or debulking the tumor, his management of adherent structures, the manner in which he attempts to protect the vasculature surrounding the tumor, and his experiences with and management of blood loss, if any, during surgery." *Id.* Essentially what is at issue in the instant Motion is the capacity of a single exemplar report to provide information useful to impeach Dr. Seljeskog's testimony about his relevant experience and how he would have handled Deardurff's case.

Plaintiff argues that because each patient and his or her circumstances are unique, the information in a single exemplar report is not relevant. The Court agrees. It is not clear that one exemplar operative report stating how Dr. Seljeskog treated one particular patient is likely to lead to the discovery of admissible evidence regarding Dr. Seljeskog's testimony as to the applicable standard of care for Deardurff. Information as to how Dr. Seljeskog chose to treat one patient could have no correlation whatsoever to his opinion as to the specific care that should have been given to Deardurff. Defendant does not argue that it should be easy for Dr. Seljeskog to identify one of his patients whose circumstances sufficiently matched Deardurff's. To the extent the operative report as to such a patient would be relevant, the Court concludes that fulfilling such a request would be overly burdensome.

It is possible that documentary evidence showing how an expert witness actually proceeded on a similar case may be relevant. For example, in *Wallbank*, an expert witness

5

testified that although the applicable standard of care did "not necessarily . . . require[] obtaining a CT scan or MRI," "she herself would have done so." *Wallbank*, 74 P.3d at 416. This testimony could be impeached by documentation demonstrating that in actuality the expert did *not* usually obtain a CT scan or MRI. However, this type of documentation is not provided by a single exemplar operative report.

Importantly, as Plaintiff points out, Dr. Seljeskog does not challenge Defendant's operative report as to his surgery on Deardurff or his general documentation procedures; thus, generally speaking, the formatting or contents of an exemplar report by Dr. Seljeskog are not relevant to the dispute central to this case. Thus, as explained above, Defendant's Motion is **DENIED** as to his request for an exemplar operative report.

### B.   Consent Form

Plaintiff objects to the relevancy of an exemplar consent form, as Dr. Seljeskog has not opined that the standard consent form used by Defendant was deficient. Plaintiff also argues that the information that Dr. Seljeskog contends should have been disclosed to Deardurff and his family consists largely of the alternatives to aggressive removal that could have been disclosed verbally, rather than in a written consent form.

Unlike a single specific operative report, however, the consent form generally used by Dr. Seljeskog is likely to provide information as to typical practices of Dr. Seljeskog that are of general applicability to Deardurff's situation. While Dr. Seljeskog does not object to the written consent form used by Defendant, he does criticize in its totality the consent Defendant obtained prior to Deardurff's surgery. Defendant points out that Dr. Seljeskog's consent form is relevant in that it may show which "risks and alternatives Dr. Seljeskog considers significant enough to document in writing on the surgical consent form." *Reply*

[#83] at 4. Plaintiff's argument highlights the simple rebuttal to any contention that Dr. Seljeskog's form is deficient and his criticism of Defendant therefore hypocritical: any deficiencies in Dr. Seljeskog's form would be addressed by verbal communication with the patient. However, this argument does not overcome the fact that the form may reveal admissible, though perhaps rebuttable, evidence. Defendant's Motion is therefore **GRANTED** as to his request for an exemplar consent form.

### III.    Conclusion

Accordingly,

IT IS HEREBY **ORDERED** that the Motion is **GRANTED in part and DENIED in part**.. Plaintiff shall provide Defendant with the exemplar consent form on or before **March 24, 2010**.

DATED: February 23, 2010 at Denver, Colorado.

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge